And we'll proceed to oral argument in the case of Nolan v. Heald College. Good morning, Your Honors. Cassie Springer Sullivan appearing on behalf of Gene Nolan who is in court with us today. And I'd like to reserve three minutes of my time for rebuttal, and I will keep my eye on the clock. There are two reasons why Dr. Nolan should prevail on her appeal today. Even applying the traditional rules of summary judgment, which the Court asked us to be prepared to discuss today, applying those rules of summary judgment, which the district court here did not do, Dr. Nolan should have prevailed on her motion for summary judgment, because under the skeptical abuse of discretion review that is now required by this circuit in Abatey and by the Supreme Court in Metlife v. Glenn, there's no genuine issue of fact that Metlife abused its discretion in finding that she was no longer entitled to disability benefits. Secondly, at the least, this case should be remanded for a bench trial because the summary judgment rules were not applied, and they should apply in this case. As the district court acknowledged, there were facts showing that Dr. Nolan was disabled, and the court did not resolve those questions of fact because it was applying the case appendix, which said that you don't need to resolve issues of fact on summary judgment where there's a highly deferential abuse of discretion. Well, you seem to be saying that even on abuse of discretion review, you can't resolve, if there's any dispute at the administrative level, I'll call it, between the doctors, the case can't resolve on summary judgment. Do you really mean that? No, Your Honor. What do you really mean? The issue is whether there's a genuine issue of fact. Well, of course there's a genuine issue of fact. I'm saying that. If there's a genuine dispute between the doctors and the administrator in his discretion chooses Dr. A as opposed to Dr. B, are you saying that that case cannot be resolved on summary judgment because you have to accept the doctor that favored the plaintiff? Is that what you're saying? No, it's not, Your Honor. What are you saying? What I'm saying is under the skeptical abuse of discretion review that's now required by Abatey and by Glenn, which is different than the pure, untempered abuse of discretion review that was applied in this case and that the Bendixson court was talking about, what the Glenn court says is you need to take the totality of the circumstances into account when evaluating whether the administrator did abuse its discretion. In the entire circumstances, are you counting in the opinions of the doctors at the administrative level? I'm sorry. I didn't quite hear you. When you say the entire circumstances, do you believe that in deciding that you must hold a trial on the opinions of the doctors at the administrative level? Yes. Where there is conflicting factual evidence and the opinions of the doctors are among those. In other words, even on abuse of discretion review, you have to consider and make a decision regarding the facts of what the doctors said at the administrative level. Even then, you have to hold a trial and decide that question. Is that right? That's right. It would be a bench trial. So every case has to be, unless it's a true summary judgment in the old sense. Right. Every case has to go to trial. And at that trial, the district judge holds a trial to decide what? Credibility. Credibility of the doctors. That's correct. And the district judge decides the plaintiff's doctor was more credible than the defense doctor. What's the conclusion then? The conclusion still takes into account what level of deference would be applied to the administrator's decision. How can you take that into account? It sounds like an oxymoron to me. If you're going to hold a trial, a factual trial, how do you take into account abuse of discretion? This is not a question of taking into account. Review is abusive for abuse of discretion. How do you do de novo abuse of discretion review, in other words? Well, it's not de novo abuse of discretion review, which the MetLife Glencourt says. But what the MetLife Glencourt specifically says is that trial courts are accustomed to taking into account a variety of factors and weighing all those and determining what the correct outcome should be. And that's what should have happened in this case. Now, there could be a scenario where there is pure abuse of discretion review. That's not this case, but that case would be where there is no financial conflict of interest. Which is almost a zero case, correct? Almost, yes. I mean, it's not this case, because here in MetLife there's no question that MetLife both paid the benefits and ensured the plan. But on your view, there would always be a possible conflict of interest, correct? There would be no way to avoid that? Not in this situation. There is a way to avoid it. In what situation could you avoid it in your view? The situation where you could avoid a financial conflict of interest is where there's an entirely self-funded plan, where there's a completely neutral administrator outside of the interests of the plan. Suppose the neutral administrator is being paid by the plan. Yes. Under this circuit's decision in Burke in September of this year, which was referenced earlier in the day, that is still a structural conflict of interest. So I create a plan, and let's say I'm going to try to make it a trust. I create a trust plan. And as long as the trustee gets his compensation from the plan, then there's a conflict of interest. Yes, that's what the circuit held. Okay. What case can you imagine where you would not have a conflict of interest? I can imagine a scenario where, and I haven't seen this scenario, I agree with you, where there is a neutral administrator. Perhaps the administrator is paid both by contributions from employees and from the plan administrator, and that neutral person is the one who resolves decisions. I mean, we have a similar scenario where the government and the Department of Managed Health Care provides opinions on medical necessity, and that's not paid by either the health plan or by the insured party. Which situations is she saying? The Department of Managed Health Care and Health Claims decides medical necessity decisions. Well, we're talking about government. Government can have all kinds of conflicts. We don't worry about that. Every administrative agency is an inherent conflict of interest. We all know that. But we don't care about that, right? It doesn't apply in this case, no. That's just health claims. So I cite that example. Is there any private situation where you could possibly not have a conflict of interest? Anybody who's working for anything is going to get paid. Yes, the person would get paid. But the only one I can imagine is where there's equal pay from both sides of the issue. And so the way you avoid the conflict is by forcing the employees to pay for part of the administration of the plan. Is that right? I suppose so. So, as I said, in 99.9% of the cases, in your view, you must have a trial of every case. Yes, you're going to have skeptical conflict of interest. But, I mean, there are situations where there could be no genuine issue of fact, that there hasn't been an abuse of discretion even applying skeptical review. This isn't that case. Well, I'm not saying the employee always wins. I'm just saying in every case you're going to have to have a trial. And then we'll find out whether the employee wins or not. Because we'll decide whether there was an abuse of discretion after we listen and weigh all the opinions of the doctors at a trial level, plus any other evidence that's brought in. And then we'll decide whether there was an abuse of discretion. And if we find an abuse of discretion, then we go back and we review. We review for abuse of discretion with deference and skepticism as to whether there was an abuse of discretion. I mean, that's how you think this would play out. Is that right? That is essentially how it would play out, yes. And this Court, the en banc Court in Kearney, suggested that it's actually not as convoluted as one might imagine because what the district court could do is convert the summary judgment motion to a motion on the administrative record. Kearney doesn't work. That's a de novo case. Kearney is a de novo case, but Kearney did not couch its decision on the fact that it was de novo. It merely noted that it was de novo. It said that in these cases summary judgment rules apply. That's all it could have been dealing with was de novo. And even then it said you don't really usually have to hold a true trial. You just take the administrative record. That's correct. And that's what would happen here. So you'll just use the administrative record? That's correct. Okay. I understand your position. Okay. So I would like to address, though, the underpinning of, I mean, Ben Dixon certainly distinguishes Kearney in saying that because it's a pure abuse of discretion review case that the traditional rules of summary judgment do not apply. But as I noted, Ben Dixon's been abrogated by Abatey and by Metlife v. Glenn, and so the underpinning of that decision does not stand anymore because now there is this, there is a process where the court takes a broader view of the record and weighs all of these factors in reaching its decision. So when the summary judgment standard applies, or whether it doesn't, Dr. Noland should have prevailed. There is no genuine issue of fact that, first of all, that she has radiculopathy. The plan limits benefits to 24 months if there is a neuromusculoskeletal condition, except it lists a variety of conditions that don't fall under that limitation. One of them is radiculopathy. Here it's very clear. Her doctors found she has radiculopathy. Metlife's doctor, employed by Network Medical Review, Dr. Jaris, agreed that she has radiculopathy. Metlife ultimately agreed that she has radiculopathy, and the district court ultimately agreed that she has radiculopathy as well. So there's no question that, you know, she has radiculopathy and that her benefits aren't limited to 24 months. And then second, there's no question that she is, in fact, disabled and entitled to benefits under the plan. The only evidence that Metlife relies upon in determining that she was not, no longer entitled to benefits is the reports of Dr. Jaris and Dr. Silver, who were employed by the Network Medical Review, which is financially beholden to Metlife, receives most of its income from Metlife, in fact. And those reports of Drs. Jaris and Silver actually only rely upon the functional capacity evaluation of David Pringle to find that she's capable of sedentary work. But if we look at that functional capacity evaluation, it says that Dr. Nolan can sit for no longer than eight minutes at a time for a max of one hour in a day. So it seems like the conclusion that she can do sedentary work was a typo of sorts, because that does not meet the legal standard from the Department of Labor of what is sedentary work, which requires an ability to sit six hours out of an eight-hour day and to lift 10 pounds. The FCE said that she could only lift 1.2 to 6 pounds. So because Metlife relied on these doctors who only relied on the functional capacity evaluation, there's really no genuine issue that she is disabled and entitled to benefits. I notice I'm at three minutes. I'd like to reserve the rest of my time. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'm Rebecca Hall, and I represent the Defendant Plan in this matter. Would you mind moving your microphone down just a little bit? You can. Yeah, there you go. I'm a little too short for this microphone the way it was. First, I want to apologize to the Court for not having actually briefed the question of the standard of review and whether it should or should not be a traditional summary judgment motion. I happen to have been out of the office for basically the entire week when I would have prepared a brief, and my associate, who helped me with the briefs before, has left the firm. But, frankly, if I had prepared a brief, it would not have addressed 90 percent of what's in the plaintiff's, excuse me, the appellant's brief, because that was basically a re-argument of the merits rather than a discussion of what standard actually should apply here under either Burt or Ben Dixon. What I would like to mention, though, is what struck me when I started reviewing the cases that have cited Ben Dixon and discussed it was that there's a reason that the Ben Dixon panel came out the way it did in terms of what is really going on when you have a summary judgment motion and where it's a benefit claim and where there is a grant of discretion, and that is you're presenting the court with a legal issue. It is not a factual issue. That's the problem with the analysis that, you know, there are fact issues to be resolved and so on. It's a legal question whether there was an abuse of discretion. Yes, there are conflicting facts in the record, but as the panel has already observed several times this morning, that's almost always going to be the case. If it were so lopsided that there were no conflicting facts in the record, it would never have gotten that far as a practical matter, because one side or the other would have just thrown up their hands and said, fine, you win on the other side. One of the things I came across when I was looking at cases that had talked about this were some that actually explained that this is what is going on. And one of them, well, actually all of them since Abatey have taken account of Abatey. It is not correct in my view that Ben Dixon came out the way it did on that issue because of Atwood. It was talking about two completely different things. One was the fact that this is a procedural vehicle to get the legal issue before the court, and the other is what was the legal issue in terms of a conflict. And for that it was relying on Atwood because that was the law at that time. But the cases that since then have talked about Ben Dixon and the way it operates and what it does in bringing this issue before the court have properly accounted for Abatey and the standard that it imposed. And they have still said this is a vehicle for getting the issue before the court. And they have recognized that in most cases the administrative record will, in fact, have conflicting evidence in it. And the question is whether it was an abuse of discretion for the administrator, the claim fiduciary, whoever it may have been, to select one body of evidence over another and credit one body over another. One of the reasons. Let me ask you one question. What you say seems to ring true as to Ben Dixon and such. When we decided Abatey, though, we said and I'm not sure what the Supreme Court and Peters said the same kind of thing. If you want to show conflict of interest, you can bring in evidence that was not before the administrator. For example, you can bring in evidence that says, well, the administrator's doctor is a turkey and he's been de-certified in 16 States because he can't be trusted on anything he says. You want to bring in that kind of evidence. Let's say that's what happens. They want to bring that kind of evidence. How does one deal with that at summary judgment? Presumably the insurance company will want to say, no, no, no, no, no, and bring in its own evidence about what a good guy this is, or perhaps that would happen. How do you deal with that issue at summary judgment? Well, the question of the impact of the conflict, which obviously is what that would go to under the scenario that the Court has proposed, is one that is committed to the discretion of the trial court, both as to what evidence it will permit the court to gather and what weight it will give to that evidence. And it is not correct, for instance, that in this case Judge Jenkins just applied some sort of pure abuse of discretion standard. He permitted evidence to be gathered. He had it. Well, if I can stop you for a moment. We're just talking about the general standards here, and I gather you're conceding that you're not advocating across the board summary judgment rule. What you're saying is if there's tender evidence on the nature of the conflict, that's a whole different matter that might well warrant a bench trial, right? If I understood the Court correctly, yes. Because, I mean, that's a separate issue. But it's one that the Court is resolving as a matter of law because it's resolving the question of was there a conflict. And if there was a conflict, how do I account for that? But I don't think that that is a fact issue in the sense of a traditional summary judgment motion.  Why not? Because if you have somebody that says there is a conflict, the company says there's no conflict. Let's take the scenario that Judge Fernandez proposed. You say there is a conflict because this guy wasn't even licensed to be a licensed doctor. He pretended to be, but he was someone who was just denying claims, signing a phony signature. So the plaintiff puts on evidence of that. The company says, no, I want to dispute that. That's not true at all. That's not summary judgment material. I don't think it impedes summary judgment because I think it still goes to the legal question of what is the conflict and what weight should the Court give it when deciding the underlying legal issue, which is was there an abuse of discretion. I mean, in all these cases, as the Court has so cogently pointed out, there is going to be a conflict of some sort, a structural conflict. Well, true, but I think my question is somewhat different. I mean, let's assume for the moment that if you have conflicting medical evidence and you're reviewing what the administrator did, that that's something that we can do as a matter of law in an existing administrative record. Just hypothetically assume that. But if someone's going to make an assertion about conflict and there's a genuine issue of fact on the conflict and the extent of conflict, how can that be resolved on summary judgment? I think that's a question that the Court can resolve as a matter of law in the course of resolving the conflict question. How? Because courts do that all the time. No, what they do is they have a bench trial and they decide who to believe and who not to believe on those kinds of issues. They don't say the issue of summary judgment is whether there's a genuine issue of material fact. I'm just asking you to accept as a given that there is on conflict. Isn't the only way to resolve that kind of evidentiary dispute a bench trial? I don't think so, because I think it still is at bottom a legal issue that the Court should resolve. And I don't think it's resolving that issue. Is this person a physician or not? I mean, that's a factual issue that the Court would have to resolve. It is, but I doubt that it could be disputed. It's probably subject to proof that's beyond me. You see, you're changing my hypothetical. That's really not fair. I'm sorry, Your Honor. No, I'm kidding. I'm a lawyer. That's kidding. That's perfectly acceptable. But I think the idea is, though, I think both of you seem to be arguing for extremes. And isn't there something in the middle here that we have where you can look at the administrative record as to some issues and say, well, this is summary judgment, because we're not going to resolve conflicts in the record itself. We're going to examine on our review whether or not that's an abuse of discretion or whatever standard we apply. But if there's something that's not within the administrative record that's fundamental to the claim and there's a genuine issue of fact, it seems to me you can't resolve that on summary judgment. You have to have a bench trial. Now, I'm not suggesting that plays out in this case in any particular way, but as we frame our analytical approach to it, isn't that the approach that makes the most sense? I think — I think I see where the Court is going with this. And that is essentially the fact pattern that did obtain in a couple of these cases. But that's why they came out differently from what one might otherwise expect. For instance, in Abatey, there was a bench trial. It came out of a bench trial. It did not come out of a summary judgment motion. And it came out of a bench trial because there were big chunks of evidence that clearly had to be resolved because the Court could not resolve it the way things stood. And it appeared to me in reading it over that there wasn't even any discussion or dispute about whether it should be a bench trial. It just was, which is why you get to the very end of it. And the panel is saying, and by the way, you should have made factual findings. But it was because there had to be extra record evidence that went to eligibility in that particular case. And the same is true of some of these other cases where there has to be extra record evidence and it is disputed. That's one thing. But when you're talking about evidence that is just pieces of evidence, for instance, here there is, in our case, there's undisputed evidence about how many reviews, how much was paid, and so on and so forth. That's what the district court in its discretion admitted on the issue of conflict permitted discovery to take place on that, and then said, and I find that, you know, when I weigh this, I don't find that it results in an abuse of discretion. And I think all of that, in our case, certainly, is a purely legal issue. And that is the point of Ben Dixon is you're talking really about legal issues here. You're not talking about the facts. Breyer. But aren't you really saying, I think we're saying basically the same thing. But if the facts are undisputed, of course the court can make some sort of judgment. But if there's a factual dispute, the only way to resolve that is at a bench trial. Applying the law, of course. It's a mixed question of law and fact. The end of the bench trial, the judge has to say, I believe this witness. I didn't believe this witness. Here's the factual predicate. And now I'm going to apply the law. So the court, then I take it, is suggesting in this hypothetical that the bench trial would be only on a conflict issue, and that other than that, you're going to look at the administrative record and say, okay, it's presented, it is what it is, there's an abuse of discretion standard, I'm going to weigh the conflict and decide how much discretion to afford it. Well, I think Judge Thomas might be suggesting on the conflict issue, but only as to new evidence that's being brought in on that issue, not as to the administrative record itself, is what we believe. And I think that might be consistent with some of these cases. But at the same time, if your position is that summary judgment is always appropriate, you can't explain a body or any of these other cases in which a bench trial occurred, can you? Well, you can if the parties – if no one moved for summary judgment, which I take to be the case in Abatey, because it was clearly the – it came out of a bench trial, and there's no dispute in that case. No one raised any issue that I can see that, gee, Your Honor, you should have granted summary judgment instead of holding a bench trial, for instance. So if the parties do something by agreement and the court treats it as a bench trial, then, you know, I don't know that it stands for the proposition that it must be a bench trial. And that is what I think I heard the plaintiff saying on this. But I want to mention one other thing, and that is you have to add Glenn to the mix, the totality of factors, discussion, the analysis that you just – the district court is going to throw all these things into the hopper and decide how much weight to give these various factors. I don't see anything in Glenn that suggests to me that that results in bench trials versus some more expeditious means that decides it as a matter of law. I think that under Glenn it is a matter of law, because Glenn talks about the fact that there are no special procedural devices. There shouldn't be an overly focused conflict, overly focused tunnel vision as to specifically the payer conflict, and that it should be only one of many factors that the court is going to look at in deciding whether there was an abusive discretion or the plan grants discretion. So I think that the focus we're getting now is too narrow, because it – I mean, I have several cases now at the district court level where basically the tail is wagging the dog. We're arguing about how many angels can dance on the head of a pin and completely losing sight of the overall case. Okay, well, let's turn to the overall case then, in this case. You have cervical damage here. You have an opinion that the plaintiff can only sit for two hours at a time, and a finding that she's certainly qualified for sedentary jobs, which generally by definition require sitting for longer periods of time. How do you reconcile that? What's your best – best – where would you point me in the record as the best evidence that she's not disabled? I would point you to the evidence that came out during her appeal, both of what her condition actually was at the time she even applied for benefits, which was very different from what was portrayed in her claim and by her doctor once her doctor realized that he goofed and was not supporting her. And I would also point the Court to the reports that came out of her doctors after she had filed her appeal, they surfaced. And that would be excerpts of Record 103-04. There's a discussion of that in which Dr. C., the same doctor who loyally supported her and became her advocate when she made her claim, reported that she had a very vigorous exercise program, certainly a lot more vigorous than mine or pretty much anybody I know, walking on a daily basis, water classes three or four days a week, Pilates two or three times a week for at least the last four months. That's not the exercise regimen. It's not the daily routine, I think, of someone who is in such intractable pain that they can't do anything. And that is what got the focus. It wasn't just the FCE that got the focus of the reviewing doctors. They focused on the fact that it appeared to them not only that the contemporaneous records, the current records, didn't show disability, but that in fact it appeared that that had been the case for quite some time. Dr. Gerrace, I believe, was the one who made that comment. And all of those reports clearly went through all the records in detail. It was not, you know, a slap and tickle, you know, brush it off kind of thing. They looked at all those records and they thought about them. And it was reviewed by appropriate specialists. They did not accept the blind support of her claim that she was getting from Dr. C and from the others who chimed in to support her. But I think that they were entitled to be more than a little concerned about the fact that within the space of three weeks, for instance, at the beginning of the claim period, Dr. C had completely reversed himself. Went from submitting an APS that said she can work eight hours a day with very slight limitations to saying she can't work at all with no explanation. Those are the records they were looking at. Thank you, Counselee. Thank you, Your Honor. Any rebuttal? Thank you. There's a couple of points I'd like to address. First, counsel said that it's a this is a matter of what's most expeditious for the district court and that somehow a bench trial is going to prolong the process of deciding these claims. But that's not the case because in Kearney, the court said that you just convert a motion for summary judgment to a judgment on the record. So there's no actual further proceeding that needs to happen. So it would be equally as quick to do a bench trial as it would be to decide summary judgment. The only thing that that does is it unties the court's hands in terms of what it can evaluate and how it can make credibility determinations. What Judge Jenkins said here, and that's at 2 ER 310 at the oral argument, he said that because this is a Rule 56 motion, he's not deciding who he believes. If this was a bench trial, he would get to make that decision and that would be an important decision in this case. And I'd also like to point out that the district court here, regardless of the summary judgment standards, imposed a standard of review that's been that's not the standard of review imposed by Abatey and by Saffron v. Glenn. He didn't have the benefit of the Saffron v. Glenn decision, I'm sorry, of the Matlock v. Glenn decision, obviously, because that came out in June of this year. And Abatey only came out a couple of months after, before he made his decision and the law hadn't been developed. But what the district court imposed was a standard of review. He did cite Abatey, didn't he? Yeah, he cited Abatey, but he actually imposed the actual quote from Atwood, which was overruled by Abatey, which was a requirement of material probative evidence tending to show that the administrator's decision was tainted by its financial conflict of interest, which the Abatey court said that was an unreasonable standard to impose on plaintiffs because it requires a smoking gun. And it said going forward, we're never going to require a smoking gun. We're always going to require some form of skeptical review. But here the district court specifically said he was just applying abuse of discretion review giving no weight to the financial conflict of interest. So that was the wrong standard. And that, for that reason alone, really, his decision should not stand. And then, finally, I'd like to address the merit issue that defense counsel brought up concerning Dr. C's letter. What Dr. C says at the page cited by defendant, it's 103, 1ER 103, is that Dr. Nolan was ordered to engage in aquatic therapy and Pilates in order to lose weight to alleviate her pain. But he goes on to say, but this has not provided any relief, although she'd lost 70 pounds. She was trying to do anything she could to feel better. And she did what she was ordered to do by her doctor, which was to engage in these relatively less strenuous exercises, aquatic therapy, in order to lose weight. And she did. But he goes on to say her sitting tolerance is poor. And in fact, her sitting tolerance was actually only an ability to sit for eight minutes at a time for a total of one hour a day. Which is what the FCE found, and which is far less, as the court noted, than the requirements imposed by the Department of Labor. Thank you, Counsel. Thank you. The case just heard will be submitted, and we'll be in recess for the morning. Thank you.
judges: Fernandez, Nelson, Thomas